**PATTON BOGGS LLP**
One Riverfront Plaza, 6th Floor
Newark, New Jersey 07102
(973) 848-5600

Attorneys for Defendants Tully Construction Co. Inc.
and Tully Industries, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: WORLD TRADE CENTER LOWER MANHATTAN DISASTER SITE LITIGATION | 21 MC 102 (AKH) (all actions identified in the Table attached to the Notice of Motion) |
| THIS DOCUMENT APPLIES TO ALL WORLD TRADE CENTER LOWER MANHATTAN DISASTER SITE LITIGATION | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS
TULLY CONSTRUCTION CO. INC. AND TULLY INDUSTRIES, INC.'S
MOTION TO TRANSFER**

**PRELIMINARY STATEMENT**

Defendants Tully Construction Co. Inc. and Tully Industries, Inc.[1] (collectively "Tully")

submit this reply memorandum in further support of their motion to transfer all actions currently

pending against Tully in Consolidated Master Docket Number 21 MC 102 ("21 MC 102") to

Consolidated Master Docket Number 21 MC 100 ("21 MC 100") or, in the alternative, to

---

[1]    As was previously addressed in the context of the 21 MC 100 litigation and in Tully's moving brief, Tully Industries, Inc. is an improperly named defendant in the World Trade Center litigation. Tully Industries, Inc. was included in the December 28, 2006 stipulation of dismissal entered in 21 MC 100 which dismissed various defendants without prejudice from actions brought in that master docket. Tully Industries, Inc. also has been improperly named as a defendant in these 21 MC 102 actions. In their opposition brief, Plaintiffs acknowledge that Tully Industries, Inc. should be dismissed. Tully will provide an appropriate stipulation to Plaintiffs' counsel to accomplish this dismissal.

49924

Consolidated Master Docket Number 21 MC 103 ("21 MC 103"). This brief also is submitted in further support of Tully's motion to transfer plaintiff Kirk Arsenault's civil action against Tully, docketed 04-cv-5338, from 21 MC 102 to 21 MC 100.

Applying every rationale previously articulated by the Court for distinguishing between 21 MC 100 and 21 MC 102, these actions should be transferred to 21 MC 100. The Check-Off Complaints in 21 MC 102 naming Tully as a defendant all base their claims against Tully upon the work Tully performed as a contractor for the City of New York (the "City") at the Deutsche Bank building (130 Liberty Street), a location this Court has previously designated as part of the World Trade Center ("WTC") Site (the area at issue in 21 MC 100). *See* Case Management Order ("CMO") 3, 21 MC 100; August 9, 2005 CMO, 21 MC 102. Furthermore, this Court previously ruled that actions against Tully allegedly relating to its work as a City contractor in the Deutsche Bank building properly belong in 21 MC 100, and not 21 MC 102. *See* April 13, 2007 Order, Docket No. 06-cv-15494, 21 MC 100 (AKH) (the "*Zablocki* Order"). Finally, this Court's articulation of a basis for the distinction between 21 MC 100 and 21 MC 102 at the June 15, 2007 status conference in 21 MC 102 focused on the nature of the work being done by the defendant: namely, whether the defendant was acting as a City contractor. *See* June 15, 2007 Status Conference Transcript 15:21 to 16:1.

The parties who oppose Tully's motion (the "opposing parties") fail to identify any prejudice that they will suffer as a result of this Court ordering the transfer. Furthermore, the opposing parties fail to address the real and significant prejudice that Tully will endure if the cases are not transferred and it is forced to proceed in two dockets for the same work. Hence, the opposition proffered is unpersuasive and for all of the reasons indicated above, these actions should be transferred to 21 MC 100.

However, should the Court determine that transfer of these actions to 21 MC 100 is not appropriate, Tully respectfully requests that the Court transfer these matters to 21 MC 103. Plaintiffs and Defendant Deutsche Bank are the only parties that oppose Tully's request in the alternative to transfer these matters from 21 MC 102 to 21 MC 103. However, neither presents an adequate argument against the transfer of these matters to 21 MC 103. Rather, Plaintiffs' response demonstrates their misunderstanding of the crucial distinction between actions belonging in 21 MC 102 versus actions belonging in 21 MC 103 when they state that plaintiffs who worked on the pile and in other locations are appropriately docketed in 21 MC 102. Defendant Deutsche Bank's argument that discovery is necessary to determine the appropriate docket for these cases is equally unpersuasive. For these reasons and the reasons set forth herein, the identified actions against Tully are brought improperly in 21 MC 102 and should be transferred to 21 MC 103.

Furthermore, no party has opposed Tully's motion to transfer *Arsenault v. Tully Constr. Co.*, 04-cv-5338 (AKH) ("*Arsenault* Action"), from 21 MC 102 to 21 MC 100. Absent opposition to Tully's motion and in light of the Court's *Zablocki* Order transferring *Zablocki v. Tully Constr. Co.*, Civil Action No. 06-cv-15494 (which is essentially identical to the *Arsenault* Action), Tully respectfully requests that the Court transfer the *Arsenault* Action to 21 MC 100 independent of the Court's ruling as to the other actions at issue in this motion.[2]

---

[2] Plaintiffs admit in their opposition that three plaintiffs should be transferred from 21 MC 102 to 21 MC 103 because those plaintiffs worked "on or beneath the footprints of the World Trade Center site as well as in privately owned buildings including the Deutsche Bank." *See* Pls.' Mem. of Law in Opp'n to Defendants Tully Construction Co. Inc. and Tully Industries, Inc.'s Motion to Transfer ("Pls.' Opp'n") at 1. But these three plaintiffs are only the tip of the iceberg – even a cursory review of the chart submitted by Plaintiffs (Exhibit 1 to the Decl. of Christopher LoPalo, Esq.) reveals that ten (10) more plaintiffs also currently claim to have worked at the WTC Site. They are Plaintiffs Ali, Chuva, Drake, Drozdz, Frelas, Manuel Idrovo, Quezada, Sumba, Teran and Wragg. This geographic confusion and imprecision by Plaintiffs demonstrates why these actions against Tully should be transferred to 21 MC 100 or, at least, to 21 MC 103. While maintaining that all of the actions should be transferred to 21 MC 100, Tully does not oppose the transfer of these thirteen plaintiffs' actions from 21 MC 102 to 21 MC 103.

## ARGUMENT

### I.    THE ACTIONS AGAINST TULLY CURRENTLY PENDING IN 21 MC 102 PROPERLY BELONG IN 21 MC 100

#### A.    THE DEFINITION OF THE WTC SITE IN CMO3 IS RELEVANT AND MUST BE FOLLOWED TO AVOID PREJUDICING TULLY.

In opposing Tully's motion, the opposing parties argue that Tully should not rely on the WTC Site definition as set forth by this Court in CMO3 as determinative of the proper docket placement of these actions.    The opposing parties also repeatedly note that the Court has indicated that use of the WTC Site definition is not to have any substantive legal effect. However, these arguments ignore that this Court has relied on this definition for purposes other than simply construing the meaning of CMO3.    Specifically, the Court used this WTC Site definition when creating the 21 MC 102 and 21 MC 103 Master Dockets (*see* August 9, 2005 Case Management Order, 21 MC 102; Case Management Order 1, 21 MC 103) and the Court employed this definition when denying Plaintiff Steven Zablocki's request to transfer his claims from 21 MC 100 to 21 MC 102.  *See Zablocki* Order.  Further, these opposing parties ignore the very real prejudice to Tully by not applying the Court defined term here and not consolidating all Tully cases into 21 MC 100 – namely that this City contractor, which unhesitatingly responded on 9/11, would be forced to defend itself simultaneously in two separate dockets for the same work.  To prevent the WTC Site definition from having a negative substantive legal effect, it is imperative that in this instance the CMO3 definition is not ignored, but rather followed and upheld.

In the very CMO that established the 21 MC 102 docket, this Court stated that all cases brought by plaintiffs "based on conduct that occurred outside the area defined as the World

Trade Center Site in Case Management Order 3 of the 21 MC 100 case" would constitute the 21 MC 102 docket. August 9, 2005 CMO, 21 MC 102 at ¶ 3. By requiring plaintiffs who allege claims based on conduct occurring outside of the area defined in CMO3 as the WTC Site to file their claims in 21 MC 102, this Court made clear that claims based on conduct occurring inside the area defined as the WTC Site belong in 21 MC 100 and confirmed that the geographic location of a plaintiff's work is a significant factor in determining the appropriate docket for that plaintiff's case. When applying this significant factor to the actions at issue here, it is clear that the alleged geographic location of the plaintiffs' work demands transfer of these cases to 21 MC 100, or in the alternative 21 MC 103. It is undisputed that the Deutsche Bank Building located at 130 Liberty Street is included in the CMO3 definition of WTC Site. Further, all claims against Tully presently docketed in 21 MC 102 are based entirely on Tully's alleged conduct for work performed at the Deutsche Bank building as a City contractor. Thus, pursuant to this Court's directive, specifically the CMO that created the 21 MC 102 docket, the actions against Tully currently pending in 21 MC 102 properly belong in 21 MC 100.

In fact, this Court has considered and decided this issue in favor of Tully. Contrary to the Plaintiffs' and Deutsche Bank's assertions, the Court's decision in *Zablocki* is not inconsistent with Tully's request for transfer. In the *Zablocki* Order, the Court denied plaintiff's request to transfer his case from 21 MC 100 to 21 MC 102 because the plaintiff worked at the Deutsche Bank building, which is "a location considered part of the World Trade Center [S]ite, as defined in Case Management Order No. 3, 21 MC 100." *See Zablocki* Order. Further, in their Oppositions, Plaintiffs and Defendant Deutsche Bank ignore that the Court acknowledged that Tully "is one of the 21 MC 100 contractors that joined the City of New York's interlocutory appeal to the Second Circuit, which resulted in the stay" of the 21 MC 100 docket, thereby

demonstrating that these Tully 21 MC 102 cases are inextricably linked with 21 MC 100. *See id.* Moreover, Defendant Deutsche Bank's argument that the Court's reasoning in the *Zablocki* Order is inconsistent with Tully's motion to transfer is inconsequential. That Zablocki allegedly worked for a Tully subcontractor and many of the plaintiffs in the actions at issue do not work for Tully or a Tully subcontractor is of no moment. Numerous other plaintiffs who did not work for Tully or a Tully subcontractor have brought claims against Tully and the only basis for such claims must be Tully's work at the Deutsche Bank building. This work is the same as Tully's work for the City on "the pile." Hence, permitting these claims to go forward subjects Tully to defending itself simultaneously in two different dockets for the same work. This is precisely what the Court intended to avoid in creating separate dockets and illustrates why these cases should be transferred. Hence, despite Plaintiffs and Defendant Deutsche Bank's argument, the *Zablocki* Order is consistent with Tully's motion to transfer and notably weighs in favor of such transfer because it illustrates that the CMO3 definition of the WTC Site is relevant to considerations of appropriate docket placement. Therefore, Tully respectfully submits that these actions against Tully should be transferred to the 21 MC 100 docket.

**B.    THE COURT HAS INDICATED THAT THE IDENTITY AND LOCATION OF THE DEFENDANTS SHOULD BE THE CONTROLLING FACT IN DETERMINING THE APPROPRIATE DOCKET.**

At the June 15, 2007 21 MC 102 status conference, the Court stated that its intent was that the 21 MC 100 docket consist of "cases that were focused mainly against the City" and that the 21 MC 102 docket consist of cases brought against "private or public homeowners independent of the Department of Design and Construction." *See* June 15, 2007 Status Conference Transcript 15:21-24. In explaining its rationale, the Court recognized that the distinction between dockets is a function of the identity of the defendants:

> What's the justification of having a different collection of cases in 102 from what I have in 100? I'll answer it. It's because it's a different Defendant. The City, except as an owner of property, is not involved. The violations alleged of the labor law were by the managers and owners of the specific properties. I mean, folks, that's what I had in mind.

(*Id.* at 19:18-25). The opposing parties' arguments that the nature of the Plaintiffs' work should be the controlling factor to determine the appropriate docket ignores the distinctions between the 21 MC 102 and 21 MC 100 dockets articulated by this Court. The instant motion by Tully is in line with the Court's statement of intent and the Court's other expressed rationales underlying the distinctions between 21 MC 100 and 21 MC 102. Tully was a City contractor performing debris removal at the WTC Site (including at the Deutsche Bank building) and was never a "manager" or "owner" of the Deutsche Bank building, nor was it a contractor hired by such entities. All of the claims currently pending against Tully in 21 MC 102 relate to the work Tully performed while acting as a City contractor, and therefore, these claims should be transferred to the 21 MC 100 docket.

Furthermore, Plaintiffs have not used the nature of plaintiffs' work to determine the appropriate docket to file claims in the past and cannot argue that this should be the determining factor now for convenience. Although many of the plaintiffs with claims currently pending in 21 MC 102 worked as cleaners or handlers, they did not file their claim in the 21 MC 102 docket based on their job description. Plaintiffs have made this apparent by filing cases in 21 MC 100 based on work performed as cleaners at the WTC Site. *See Rodriguez v. A. Russo Wrecking, et al.*, No. 07-cv-5062 (AKH) (attached to the Cert. of Joseph E. Hopkins, Esq., December 6, 2007 ("Hopkins Cert.") as Exhibit A). These plaintiffs did not file their claims pursuant to their job description but chose their docket based on the location of their work at the WTC Site and the identity of the defendants they were suing. If for no other reason than consistency in this

litigation, these factors should continue to play the determining role in deciding the appropriate docket and not the nature of the plaintiffs' work.

## II.    IF TRANSFER TO 21 MC 100 IS FOUND NOT TO BE APPROPRIATE, THE COURT SHOULD TRANSFER THESE ACTIONS TO 21 MC 103.

In the alternative, should the Court determine that transfer of these matters to 21 MC 100 is not appropriate, the Court should transfer these actions to 21 MC 103. This Court created 21 MC 103 to encompass the claims of "straddler" plaintiffs who performed work at the WTC Site as defined in CMO3 and at other locations. *See* CMO1, 21 MC 103 at 1-2 (Mar. 28, 2007). As a result, if the Court chooses not to transfer these actions to 21 MC 100, to avoid having Tully (whose work at the Deutsche Bank building was precisely the same kind of work with which it was involved "on the pile") inappropriately grouped into the proceedings in the 21 MC 102 docket, the 21 MC 103 docket would be a more appropriate place for the 21 MC 102 actions pending against Tully. Like the "straddler" actions in 21 MC 103, the plaintiffs who are bringing claims against Tully in 21 MC 102 allege injuries purportedly resulting from their work at the WTC Site (*i.e.,* the Deutsche Bank building) and at various locations outside of the area described in the definition of the WTC Site. *See, e.g., Agudelo v. 100 Church Street, LLC*, No. 07-cv-4446 (AKH) (1 Federal Plaza, 100 Church Street, 70 Pine Street, 75 Park Place, Deutsche Bank Building, High School of Economics and Finance, Verizon Building) (attached as Exhibit B to the Hopkins Cert.). Accordingly, 21 MC 103 is a more appropriate docket for these actions in the event the Court does not transfer these matters to 21 MC 100.

In fact, Plaintiffs' opposition provides support for Tully's argument that these actions should be transferred to 21 MC 103. Plaintiffs state that "[t]he Plaintiffs at issue [in this motion] are 'clean-up personnel' who toiled – **not only on the pile – but in privately owned buildings:** exactly the class of claimants for whom the 21 MC 102 docket was created." *See* Plaintiffs'

Opposition at 3 (emphasis added).  Although possibly a gross error in wording, this statement seems to demonstrate Plaintiffs apparent misunderstanding of the distinctions between the three WTC dockets at issue.  Indeed, at issue here are exactly the types of claims that plaintiffs have described that belong in 21 MC 103 and not 21 MC 102 as they suggest.  This Court created 21 MC 103 for plaintiffs with alleged claims stemming from work "performed work at the World Trade Center [S]ite **and** at other sites."  CMO 1, 21 MC 103 at 1 (emphasis added).  Plaintiffs who performed work "not only on the pile – but in privately owned buildings" have been directed by the Court in the CMO that created the 21 MC 103 docket to file their claims in 21 MC 103.  Therefore, the actions at issue should be transferred to the 21 MC 103, the docket created for these work situations.

## III.    CONDUCTING DISCOVERY IS NOT NECESSARY TO TRANSFER THESE CASES TO EITHER DOCKET.

Defendant Deutsche Bank suggests that discovery is necessary to determine which docket the claims at issue properly belong.  In reality this is unnecessary because the Court currently has all of the requisite information to make this determination.  Tully was at the Deutsche Bank building as a City contractor performing debris removal.  Tully never owned or managed the Deutsche Bank building, nor are Plaintiffs alleging that Tully assumed those roles.  Therefore, all of the claims currently pending against Tully in 21 MC 102 relate to Tully's work as a City contractor at the Deutsche Bank building.  This is all of the information necessary for the Court to make a determination regarding transfer.  Discovery will not provide any additional information and Tully should not be burdened with providing discovery in 21 MC 102, when it belongs in 21 MC 100 or 21 MC 103 and will be subject to the Core Discovery recently established in 21 MC 100.  In sum, whether transferred to 21 MC 100 because the plaintiffs' claims against Tully allegedly arise from their work at the Deutsche Bank building or transferred

to 21 MC 103 because many of the Tully Plaintiffs are essentially "straddler" plaintiffs who worked both at the WTC Site and at other locations, discovery is not necessary for the Court to rule.

## <u>CONCLUSION</u>

For the foregoing reasons, and the reasons set forth in Tully's moving brief, Tully respectfully requests that this Court transfer all actions currently pending against it in 21 MC 102 to 21 MC 100 or, in the alternative, to 21 MC 103.

Respectfully submitted,

_____s/_____
James E. Tyrrell, Jr., Esq.
PATTON BOGGS LLP
Counsel for Tully Construction Co. Inc.,
Tully Industries, Inc.

Dated:  December 6, 2007

49924